Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
Scott E. Calvert (SBN 210787) *sc@mckennonlawgroup.com*
**McKENNON LAW GROUP PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone:  949-387-9595  |  Fax:  949-385-5165

Attorneys for Plaintiff Brian Wright

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| BRIAN WRIGHT,<br><br>                    Plaintiff,<br><br>vs.<br><br>AON HEWITT ABSENCE MANAGEMENT, LLC; THE BOEING COMPANY; AETNA LIFE INSURANCE COMPANY; and DOES 1 to 10, inclusive,<br><br>                    Defendants. | Case No.:<br><br>Action Filed:<br><br>Trial Date:<br><hr>**COMPLAINT FOR RECOVERY OF ERISA PLAN BENEFITS; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PRE-JUDGMENT AND POST-JUDGMENT INTEREST AND ATTORNEYS' FEES**<br><br>[Filed Concurrently With:<br>-  Civil Cover Sheet;<br>-  Summons; and<br>-  Certification of Interested Parties] |

## JURISDICTION AND VENUE

1.     Plaintiff Brian Wright ("Plaintiff") brings this action to recover benefits and to enforce and clarify his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. section 1132(a)(1)(B).  This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA section 502(e) and (f), 29 U.S.C. section 1132(e) and (f), and 28 U.S.C. section 1331.

2.     Venue lies in the Central District of California, Western Division pursuant to ERISA section 502(e)(2), 29 U.S.C. section 1132(e)(2), because Plaintiff resides in this District, some of the breaches alleged occurred in this District and the ERISA-governed plan at issue was administered in part in this District.

## THE PARTIES

3.     Plaintiff is an individual who, at all times relevant to this action, was a citizen of the state of California and a resident of Los Angeles County, California, City of Torrance.  Further, at all times relevant to this action, Plaintiff was a participant, as defined by ERISA section 3(7), 29 U.S.C. section 1002(7), in the employee welfare benefit plan established by his employer The Boeing Company, at issue in this action.

4.     Defendant Aon Hewitt Absence Management, LLC ("Aon Hewitt") at all relevant times administered the short-term disability benefits provided to Plan participants, including Plaintiff.  The Plan was self-funded by The Boeing Company, and promised to pay short-term disability ("STD") benefits to Plaintiff



1   should he become disabled ("STD Plan").  Aon Hewitt acted as a claims

2   administrator and as an ERISA claims fiduciary of the STD Plan.

3

4       5.     Defendant Aetna Life Insurance Company ("Aetna"), at all relevant

5   times administered long-term disability ("LTD") benefits provided to Plan

6   participants, including Plaintiff, by issuing group policy number 728777 to The

7   Boeing Company ("Boeing").  That policy and the Plan promised to pay LTD

8   benefits to Plaintiff should she become disabled.  Aetna has acted as a claims

9   administrator and as an ERISA claims fiduciary of the Plan.

10

11       6.     Defendant The Boeing Company ("Boeing"), is an at all times was,

12   duly authorized to do, and doing business, in the County of Los Angeles, State of

13   California, within the Judicial District of the Central District Court of California,

14   and at all relevant times, administered disability benefits provided to Plan

15   participants, including Plaintiff, by acting as an ERISA Administrator and fiduciary

16   of both the STD Plan and LTD Plan.  In addition, as the STD Plan was self-funded,

17   Boeing is responsible for all unpaid benefits under that Plan.  (Aon Hewitt, Aetna

18   and Boeing are referred to collectively as "Defendants")

19

20       7.     The true names and capacities, whether individual, corporate, associate

21   or otherwise of the defendants named herein as DOES 1 through 10, inclusive, are

22   unknown to Plaintiff at this time, who therefore sue DOES 1 through 10 by fictitious

23   names and will ask leave of the Court to amend this Complaint to show the true

24   names and capacities of DOES 1 through 10 when the same are ascertained; DOES

25   1 through 10 are sued as principals and/or agents, servants, attorneys, and

26   employees of said principals, and all the acts performed by them were within the

27   course and scope of their authority and employment.  Plaintiff is informed and

28   believes and thereupon alleges that each of DOES 1 through 10 is legally

Case No.: 

1   responsible in some manner for the events referred to herein, and directly and

2   proximately caused the damages and injuries to Plaintiff as hereinafter alleged.

3

4   **FACTUAL BACKGROUND**

5

6        8.     In or about June 1985, Plaintiff began working for Boeing.  During his

7   more than 30-year career at Boeing, he held multiple positions, and was employed

8   as a "Project Engineer 6" on the last day he was capable of working.  As a "Project

9   Engineer 6," Plaintiff was responsible for a "variety of staff assignments including

10  managing facilit[ies]; preparing/submitting/defending proposals; delivering training;

11  presenting/attending meetings, etc."  Plaintiff's job required the supervision of

12  others, and in an 8-hour work day, he would spend approximately three hours

13  sitting, three hours standing and two hours walking.  His job also required frequent

14  bending/stooping and pushing/pulling, and occasional crawling, reaching above

15  shoulder level, kneeling, lifting up to 50 lbs.  In performing these duties, Plaintiff

16  was "continuously busy," and he described the job as "high stress."  While, as noted

17  below, Plaintiff's job was described by Aon Hewitt as "light duty" and by Aetna as

18  requiring only "sedentary" duty, the requirement that he lift up to 50 lbs. means that

19  his job was more accurately classified as "medium" duty.

20

21       9.     While Plaintiff's last day of work was in September 2015, his back

22  problems did not suddenly appear.  Indeed, his conditions were identified and

23  diagnosed well before that date.  Plaintiff's back pain first began in or about 2000

24  (the result of a significant trauma while moving a sofa sleeper), but Plaintiff found a

25  way to continue to work through various treatments and coping mechanisms.  In

26  2012, the pain worsened due, at least in part, to a botched epidural injection causing

27  additional injury, but again, Plaintiff continued to work.  Unfortunately, the pain

28  eventually became chronic, affected Plaintiff's ability to drive more than a few

-3-

Case No.:



miles and ultimately became too much to bear.  Accordingly, Plaintiff was forced to stop working, and instead seek the disability benefits that where promised to him should be find himself totally disabled and unable to work.

10.    As detailed below, Plaintiff's medical records support his contention that he has been disabled since September 4, 2015, and is therefore entitled to the unpaid STD benefits from January 17, 2016 to March 3, 2016, and LTD benefits from March 4, 2016 and forward.

<u>Plaintiff's Claim for STD Benefits</u>

11.    As a long-time Boeing employee, pursuant to the terms and conditions of the Plan, Plaintiff was entitled to STD benefits because he met the STD Plan's operative definition of "disabled," and the other conditions necessary to qualify for STD benefits during the requisite time period.

12.    The STD Plan defines "disabled as:

You become disabled as a result of accidental injury, illness, or a pregnancy-related condition and your accidental injury, illness, or pregnancy-related condition prevents you from performing the material duties of your own occupation or other appropriate work the Company makes available.

     •    You continue under the care of a physician throughout your disability. You also may be required to be examined by a physician chosen by the service representative as often as reasonably necessary to verify your disability.



- You are earning 80 percent or less of your indexed predisability earnings.

13.   Under the STD Plan, a disabled claimant is entitled to up to 26 weeks of STD benefits.  However, while Plaintiff's claim for STD benefits was initially approved, he only received only about 20 weeks of STD benefits.  Under the terms of the Plan, Plaintiff is owed 60% of his weekly salary for the last six weeks of STD benefits, before applying applicable offsets.

14.   On or about September 4, 2015, Plaintiff could no longer continue to perform the job duties required of a Project Engineer 6 with Boeing.  Accordingly, he complied with the terms of the STD Plan to file a claim.  First, he called the Boeing Leave Service Center and notified them of his disability.  He was then informed that Aon Hewitt was the administrator for the STD Plan, and would make the decision of whether or not he was disabled under the terms of the STD Plan. Plaintiff then signed authorizations allowing Aon Hewitt to obtain his medical records, and also provided copies of medical records to Aon Hewitt.  These medical records, prepared by his treating physicians, supported Plaintiff's claim for STD benefits.

15.   For example, on May 27, 2015, Dr. Shiu-Kwan Fok examined Plaintiff and observed reduced range of motion in the cervical spine, and tenderness, reduced range of motion and pain in the thoracic spine.  Following the examination, Dr. Fok offered the following diagnoses: nerve root and plexus disorders (353.8), radiculitis, thoracic or lumbar (724.4), chronic pain syndrome (338.4), degeneration of thoracic or thoracolumbar intervertebral disc (722.51), discogenic syndrome of thoracic intervertebral disc (722.11), facet joint syndrome (724.8), neuropathy (355.9), opioid dependence (304.00) and facet joint osteoarthritis (721.90).  Dr. Fok also

-5-

Case No.:



prescribed Norco (a combination of acetaminophen and hydrocodone, an opioid, used to treat pain) and Baclofen (used to treat muscle spasms, pain and stiffness), stopped the prescription for Valium and prescribed one month of Hysingla (a new slow-release version hydrocodone, a powerful opioid), to be possibly replaced with hydrocodone the following month.

16.     As a result of his condition, Plaintiff was forced to stop working on March 25, 2015 (and was paid STD benefits during his time away from work). Despite the medication that Plaintiff was prescribed, his pain did not substantially decrease, yet, Plaintiff attempted to work despite the pain and returned to work on June 16, 2015.  However, in September 2015, due to the chronic pain, Plaintiff was again forced to stop working, this time for good.

17.     On September 11, 2015, Plaintiff returned to Dr. Fok, and presented with back pain, joint pain and limitation of motion.  Plaintiff explained that he experienced pain in "the mid-back, low back and upper back," and described the pain as "sharp, throbbing, aching, and shooting, constant, rated 8/10 in severity, relieved by epidural injection and pain medication, aggravated by bending, changing positions, daily activities, extension, flexion, standing, twisting and walking, associated with fatigue and withdrawal from activity."  As a result of his long treatment of Plaintiff, this most recent examination (which showed decreased range of motion due to pain and stiffness) and Plaintiff's complaints, Dr. Fok diagnosed Plaintiff with mid back pain (724.5/M54.9), degenerative disc disease, thoracic (722.51/M51.34), spinal stenosis of thoracic region (724.01/M48.04), foraminal stenosis of thoracic region (724.01/M4B.04), chronic pain (338.29/G89.29) and opioid dependence (304.00/F11.20), and ordered an MRI and additional facet injections.



18.    On September 21, 2015, Dr. Evan Minkoff noted Plaintiff diagnoses of pain in thoracic spine (M54.6/724.1) and thoracic spondyloarthritis (M46.84/721.21), and performed facet joint injections at right T10-11, T11-12 and T12-L1.  These injections are designed to decrease pain, but can themselves be very painful, and are not always effective for long periods of time.  Facet joint injections are also an attempt at temporary pain relief, rather than a permanent treatment of the underlying cause of the pain.

19.    Dr. Fok ordered an MRI of Plaintiff's thoracic spine to examine his bulging discs, and the MRI was reviewed by Amanda Murphy, M.D., on September 25, 2015.  In her report, she identified "small posterior disc bulges at T2-3, T7-8, T8-9 and T-9."  These reports were consistent with the thoracic spine MRI that Plaintiff submitted to on September 12, 2014, which, in a report prepared by Amy Yaghmai, M.D., showed "mild central posterior disc bulges [] at T7-8 though T9-10."

20.    On October 15, 2015, Plaintiff was again examined by Dr. Fok, who noted that Plaintiff continued to experience pain in the mid-back, lower back and upper back, as well as limitation of motion and fatigue.  Plaintiff described the pain as "sharp, throbbing, aching, and shooting, constant, rated 8/10 in severity, relieved by epidural injection and pain medication, aggravated by bending, changing positions, daily activities, extension, flexion, standing, twisting and walking, associated with fatigue and withdrawal from activity," and was recommending another injection for pain relief.  On examination, Dr. Fok confirmed tenderness from T7-8 through T9-10, as well as decreased range of motion in the thoracic spine and cervical spine and stiffness of the lumbar spine.  Dr. Fok then diagnosed Plaintiff with mid back pain (724.5/M54.9), degenerative disc disease, thoracic (722.51/M51.34), spinal stenosis of thoracic region (724.01/M48.04), foraminal



stenosis of thoracic region (724.01/M48.04), chronic pain (338.29/G89.29) and opioid dependence (304.00/F11.20), and ordered another MRI and facet joint injection, to again be performed by Dr. Minkoff.  Plaintiff was also ordered to continue taking Norco and Baclofen for pain relief.

21.     That same day, October 15, 2015, Dr. Fok completed an Attending Physician's Statement in which he listed a primary diagnosis of degenerative disc disease, spinal stenosis (722.51-724.01) and secondary diagnosis of chronic pain (338.29).  Dr. Fok stated that while he first examined and treated Plaintiff in January 2012, he advised Plaintiff to stop working on September 2, 2015.  He also noted that Plaintiff has been undergoing facet joint injections and chiropractic treatment as part of his treatment.  In the document, Dr. Fok noted that Plaintiff complained on "sharp, throbbing, shooting pain radiating from [his] back," and that his pain was aggravated by daily activities, standing and walking.  He also explained that on examination, he observed spasms and weakness in the mid-torso, as well as reduced range of motion on flexion, extension, lateral bending and rotation of the thoracic-lumbar spine.  Dr. Fok also explained that he was unable to bend, stand or drive for long periods of time.  In light of these findings, Dr. Fok stated that Plaintiff would be unable to return to work until at least November 17, 2015, and possibly longer.

22.     From October 2015 to January 2016, Plaintiff continued his treatment with Dr. Fok and Dr. Minkoff, which included examinations, facet injections and medication management.  However, there was no appreciable improvement in his condition, with the examinations producing similar findings and diagnoses as in the previous months.

23.     For example, on November 30, 2015, Dr. Fok completed a Boeing Function Capacities form.  On the document, Dr. Fok confirmed that Plaintiff



1   remained disabled and was not expected to be able to return to work before February

2   16, 2016.  He once again diagnosed Plaintiff with M51.34 (degenerative disc disease

3   of the thoracic spine), and listed objective findings of "tenderness" of both the mid

4   and lower thoracic spine, as well as decreased range of motion of the thoracic spine.

5   With respect to Plaintiff's functional capacity, Dr. Fok noted that he could only lift

6   between 5-10 lbs. for an hour a day, and was permanently unable to lift more than

7   that weight.  In addition, he was prohibited from bending, working overhead and

8   reaching above shoulder level.  He was also limited to sitting and walking between 1

9   to 3 hours a day, standing and climbing stairs between 0-1 hour a day and unable to

10   climb a ladder.  Dr. Fok also noted that Plaintiff was unable to utilize his hands in

11   any activity that caused high-impact vibration or low impact vibration, or required

12   forceful griping or repetitive motion.

13

14       24.    On January 7, 2016, Dr. Fok extended Plaintiff's disability from

15   January 17, 2016 to March 17, 2016.

16

17       25.    After reviewing these, and other medical documents prepared by

18   Plaintiff's treating physicians, Aon Hewitt approved and paid Plaintiff's claim for

19   STD benefits from September 2, 2015 to January 16, 2016.

20

21       26.    However, by letter dated February 10, 2016, Plaintiff was informed by

22   Boeing that Aon Hewitt denied his claim for STD benefits as of January 17, 2016 on

23   the grounds that the medical information in the file was allegedly insufficient to

24   support his ongoing impairment.  Specifically, Plaintiff was informed that "Dr. Fok

25   does not notate any abnormal clinical exam findings to support your pain reports."

26   However, there were three problems with this justification to deny Plaintiff's STD

27   claim.  First, the STD Plan does not specifically require "abnormal clinical exam

28   findings" to support an STD claim.  Second, the STD Plan does not specifically state



that complaints of pain alone are insufficient to support an STD claim.  Finally, as detailed above, the medical records from Dr. Fok and Plaintiff's other treating physicians do include "abnormal clinical exam findings" sufficient to support Plaintiff's STD claim, including, but not limited to, the MRI reports and the reduced range of motion on flexion, extension, lateral bending and rotation of the thoracic-lumbar spine found on examination.  The facet injections performed by Dr. Minkoff are further evidence of support for Plaintiff's claim, as such injections are only administered for patients with extensive pain.

27.    In denying Plaintiff's STD claim, neither Aon Hewitt nor Boeing explained why Dr. Fok's statement that Plaintiff was disabled through at least March 16, 2016 was sufficient to meet Boeing's Non-Occupational Medical Leave requirement (a different benefit offered by Boeing), yet insufficient to qualify Plaintiff for ongoing STD benefits.

28.    After receiving the letter notifying him that his STD claim was being denied with approximately six weeks of benefits still remaining, Plaintiff immediately appealed.  Plaintiff submitted additional medical documentation in support of his appeal, including medical information dating back to 2014, as well as records from January and February 2016 from Dr. Fok and Dr. Minkoff, which not only documented Plaintiff's ongoing disability, but also included Dr. Fok's specific notation extending Plaintiff's disability from January 17, 2016 to March 17, 2016.

29.    The additional records also included a report by Dr. Sirinan Tazen following her examination of Plaintiff.  In her report, dated February 18, 2016, Dr. Tazen explained that Plaintiff presented with "hypertension, pre-diabetes, chronic upper back and rib cage pain" and was referred "for an evaluation of thoracic spinal stenosis."  She noted that a review of the MRI reports showed mild posterior disc

Case No.:



bulge at T2-T3 and T7-T8 through T9-T10.  She further noted that Plaintiff's medication regime included Atenolol (for blood pressure and chest pain), Baclofen, Hydrochlorothiazide (for high blood pressure and fluid retention), Hydrocodone-Acetaminophen, imiquimod (a skin cream) and Nifedipine (for high blood pressure and chest pain).

30.     Dr. Tazen then identified 27 different "active problems" affecting Plaintiff, including but not limited to:  asymptomatic varicose veins (183.90), back pain (M54.9), benign neoplasm of skin of trunk (D23.5), callus (L84), dysplastic nevus of trunk (D22.5), elbow joint pain (M25.529), foot pain (M79.683), hemangioma of other sites (D18.09), herniation of intervertebral disc between T8 and T9 (M5124), hypertension (I10), hyperlipidemia (E78.5), ilioinguinal nerve entrapment, impaired fasting glucose (R73.01), knee pain (M25.569), left lower quadrant pain (R10.32), lymphadenopathy (R59.1), melanocytic nevus (D22.9), neoplasm of uncertain behavior of skin (D48.5), Rash (R21), rupture of extensor tendons of wrist, seborrheic keratosis (L82.1), skin lesion (L98.9), wrist pain (M25.539) and acute sinusitis (J01.90).  Following the examination, Dr. Tazen diagnosed Plaintiff with myofascial pain syndrome (M79.1) and herniation of intervertebral disc between T8 and T9 (M51.24).  On examination, Dr. Tazen stated that there was "tenderness to palpitation of his upper mid-back and right side of the back," but that she did not recommend surgical intervention at that time.  Dr. Tazen and Plaintiff also discussed a change in the medication; however, Plaintiff noted that certain medications recommended by Dr. Tazen were ineffective in the past and caused drowsiness.

31.     On February 22, 2016, Plaintiff received confirmation his appeal was received.  However, by letter dated March 7, 2016, Plaintiff was informed that "the decision to deny your claim for [STD] benefits will be upheld."  Plaintiff was

Case No.:



informed that the STD claim was reviewed by a "paper reviewer" who offered an opinion based solely on a review of Plaintiff's medical records, but not an examination of or even a discussion with Plaintiff. Based purely on the "paper review," Aon's hired physician believed Plaintiff was not impaired and had the ability to perform the duties of an occupation that required "light physical demand duties." The denial letter made no attempt to explain away the opinions of Dr. Fok, Dr. Minkoff and Dr. Tazen regarding Plaintiff's diagnoses, restrictions and limitations. Nor did the letter attempt to explain why the MRI results were insufficient to substantiate Plaintiff's complaints of pain.

32.     The February 23, 2016 letter denial letter stated that the decision was final and Plaintiff's administrative remedies have been exhausted. Plaintiff therefore has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

<u>Plaintiff's Claim for LTD Benefits</u>

33.     Under the terms of the LTD Plan, Plaintiff is entitled to benefits if he meets the following "Test of Disability:"

> You become disabled as a result of accidental injury, illness, or a
> pregnancy related condition and your accidental injury, illness, or
> pregnancy prevents you from performing the material duties of your
> own occupation (or other work the Company makes available) during
> the 26 week elimination period and first 24 months of benefits. After 24
> months of benefits, you must be unable to work at any reasonable
> occupation for which you may be fitted by training, education, or

Case No.:



experience.  (This period may exceed 24 months of benefits if interrupted by temporary or intermittent returns to work.)

- • You continue under the care of a physician throughout your disability. You also may be required to be examined by a physician chosen by the service representative as often as reasonably necessary to verify your disability.
- • You are earning 80 percent or less of your indexed predisability earnings.

34.    Under the LTD Plan, a disabled claimant is entitled to benefits totaling 100% of predisability earnings during the first 24 months of disability.  After 24 months, the monthly benefit is reduced to 80% of predisability earnings.  In addition, should Plaintiff remain disabled, he would be entitled to benefits until he reaches his Social Security Retirement age in 2029, when he turns 67.

35.    While his STD clam was still pending, based on the statements of his physicians, Plaintiff expected that he would likely remain off work beyond the 26 weeks that his STD benefits would be payable.  Accordingly, he contacted Boeing about LTD benefits and was told to contact Aetna, the LTD claim administrator.  On or about January 6, 2016, Plaintiff called Aetna to discuss how to submit a claim for LTD benefits.  Aetna informed Plaintiff that it could, and would, obtain the medical documents that were already submitted as part of his then-ongoing STD claim.  Aetna also asked Plaintiff to complete LTD claim forms and authorizations, and provided updated medical records.

36.    In January 2016, pursuant to Aetna's request, Plaintiff completed additional claim forms including authorizations and reports of other benefits, which

Case No.:



1   included STD benefits and California State Disability benefits.  He also provided

2   Aetna with medical records supporting his claim.

3

4       37.    On January 7, 2016, Plaintiff received additional facet injections from

5   Dr. Minkoff in an attempt to help manage his ongoing pain.  That same day, Dr.

6   Minkoff also confirmed the previous diagnoses of pain in thoracic spine

7   (M54.6/724.1) and thoracic spondyloarthritis (M46.84/721.21).

8

9       38.    The next day, on January 8, 2016, Dr. Fok again examined Plaintiff,

10  offered diagnoses of mid back pain (724.5/M54.9), degenerative disc disease,

11  thoracic (722.51/M51.34), spinal stenosis of thoracic region (724.01/M48.04),

12  foraminal stenosis of thoracic region (724.01/M48.04), chronic pain

13  (338.29/G89.29), opioid dependence (304.00/F11.20), abdominal pain

14  (789.00/R10.9), kidney stone (592.0/N20.0), liver hemangioma 228.04/018.03 and

15  rib pain on right side (786.50/R07.81).  Plaintiff's medication was changed, with the

16  Percocet (used to treat moderate to moderately severe pain) stopped because it was

17  not effective, but he continued to take Norco and Baclofen.  Dr. Fok also extended

18  Plaintiff's disability from January 17, 2016 to March 17, 2016.

19

20      39.    Per Aetna's request, Plaintiff again submitted authorizations and claim

21  forms on January 28, 2016.  In the "Other Income Questionnaire," Plaintiff again

22  informed Aetna that he was receiving STD benefits and State Disability benefits.

23  On the "Work History and Education Questionnaire," Plaintiff described his job as

24  "variety of staff assignments including managing facilit[ies]; preparing, submitting,

25  defending proposals; delivering training; presenting/attending meetings, etc."  Then,

26  asked to list the duties he could no longer perform, Plaintiff stated "cannot perform

27  any; cannot drive other than locally, on opioid medication daily, cannot stand or sit

28  for long periods of time > 1-2 hours."  He then noted that his job required the



supervision of others, and that in an 8-hour work day, he would spend 3 hours a day sitting, 3 hours a day standing and two hours a day walking.  His job also required frequent bending/stooping and pushing/pulling, and occasional crawling, reaching above shoulder level, kneeling, lifting up to 50 lbs.[1]  Plaintiff also stated that his job was "continuously busy" and "high stress."  On the forms, Plaintiff also again provided Aetna with a list of his physicians.

40.     Then on, February 3, 2016 following another examination and further confirmation of Plaintiff's continuing disability, Dr. Fok completed an "Attending Provider Statement," in which he listed a primary diagnoses of M51.34 (degenerative disc disease, thoracic) and a second diagnosis of M48.04 (spinal stenosis of thoracic region).  Dr. Fok indicated that Plaintiff "can do normal things like bending, standing, driving for short periods," but that he could not bend, stand or drive "for long periods of time."  Dr. Fok indicated that the treatment plan was to continue the medication, monthly visits and epidural injections.  He noted that Plaintiff was not likely to have full recovery, and his prognosis for future improvement was "guarded."

41.     Plaintiff also provided Aetna with Dr. Tazen's February 18, 2016 report, which, as summarized above, further confirmed Plaintiff's diagnoses and related restrictions and limitations

42.     Despite the very significant medical evidence supporting Plaintiff's LTD claim, Aetna notified Plaintiff, by letter dated March 4, 2016, that it denied his claim for LTD benefits.  In what appeared to be complete reliance upon its unnamed "licensed medical consultant," Aetna stated that after reviewing the available

---

[1] When asking for Plaintiff's statement regarding his job duties, Aetna's form does not provide any guidance as to the difference between "occasionally," "frequently" and "continually."

1   medical documents, "there is no documentation or observation of limitations in
2   strength or range of motion of the upper and lower extremities."

3

4       43.    Aetna also stated that Plaintiff had the ability to perform the duties of
5   his "sedentary" occupation.  Aetna's decision to classify Plaintiff's occupation as
6   sedentary was in direct contrast to Aon Hewitt's finding that Plaintiff's job required
7   "light" duties, as well as the fact that the need to lift up to 50 lbs. placed his job in
8   the "medium" duties category per the Department of Labor.  The denial letter failed
9   to address this discrepancy.

10

11      44.    Further, while Plaintiff disputes that his job was sedentary in nature,
12  even if that were true, he is still disabled as the Ninth Circuit created a bright-line
13  rule that a person who cannot sit for more than four hours a day cannot perform a
14  sedentary occupation and is therefore totally disabled.

15

16      45.    In *Armani v. Northwestern Mutual Life Insurance Company*, 840 F.3d
17  1159 (9th Cir. 2016), the Ninth Circuit explained that, where the claimant's
18  attending physicians agreed he could sit at most four hours per an eight-hour
19  workday, he was unequivocally disabled from performing his own sedentary
20  occupation as a full-time controller (and from any other sedentary occupation),
21  because sedentary jobs require mostly sitting and generally at least six hours per
22  day.  The Court explained (citing numerous cases that agree):

23

24          Accordingly, these cases reflect the logical conclusion that an employee
25          who is unable to sit for more than half of the workday cannot
26          consistently perform an occupation that requires sitting for "most of the
27          time." We agree with this commonsense conclusion and hold that an
28          employee who cannot sit for more than four hours in an eight-hour

-16-



workday cannot perform "sedentary" work that requires "sitting most of the time." *Id.* at 1163.

46.     The *Armani* court held as much even though the insurer's medical consultants disagreed with the insured's attending physicians about the claimant's sitting limits.  They concluded, based on reviewing his medical records, that the claimant had no sitting restrictions or limitations that would prevent him from performing a full-time sedentary job (when the insurer had contended sedentary work involves sitting most of the time).  The Ninth Circuit placed no weight on the insurer's paper review opinions and, despite them, stated there was "*undisputed* evidence that . . . Armani was unable to sit for more than four hours a day" based on the attending physicians' opinions.  *Id.* at 1164 (emphasis added).

47.     The functional limits reported to Aetna from Plaintiff's attending physicians (that he was limited to sitting and walking between 1 to 3 hours a day) were even more convincing that he could not perform a sedentary job than the attending physicians' opinions in *Armani* (sit at most four hours per day).  But Aetna still concluded Plaintiff was not disabled based upon its unreliable "paper reviewers."  The Ninth Circuit *Armani* court placed no weight on paper reviews under similar circumstances, by calling the attending physician evidence "undisputed," and establishes that Aetna's conduct here in doing so was patently unreasonable.

48.     By letter dated July 15, 2016, Plaintiff, through his counsel, appealed Aetna's denial of his LTD claim, supplementing Plaintiff's claim with updated medical documents from his doctors supporting his claim for LTD benefits, and detailed Aetna's errors in denying Plaintiff's claim for LTD benefits.

Case No.:



49.     The July 15, 2016 appeal letter noted that while Aetna concluded that Plaintiff was capable of returning to work, the medical records contained in Aetna's claim file, prepared by physicians who actually examined and treated Plaintiff, instead strongly supported his LTD claim.  The letter then briefly summarized the recent medical records of Dr. Fok, Dr. Minkoff, Dr. Murphy, Dr. Yaghmai and Dr. Tazen that support his claim.

50.     Next, Plaintiff explained that, in addition to the medical evidence contained in the claim file which supports Plaintiff's claim for LTD benefits, his more recent medical records overwhelmingly support his claim.  Specifically, the records prepared by Dr. Fok and Melvin Snyder, M.D. support his contention that he was and has remained totally disabled since September 3, 2015.  Indeed, the medical records reveal that Plaintiff's pain and overall condition have become progressively worse, as expected given that his diagnoses are degenerative in nature.

51.     For example, Dr. Fok examined and treated Plaintiff on March 7, 2016, noting the same complaints of lower back pain, at a level 7 of 10 in severity, and radiating to his ribs.  In addition, it was noted that his pain was "aggravated by walking, standing, and too long, driving and relieved by medication and stretching."  After confirming that Plaintiff has all of the same diagnoses as before, he again prescribed Baclofen and Norco and recommended additional facet injections.

52.     On March 9, 2016, Plaintiff was examined by Dr. Snyder.  In the Encounter Note, Dr. Snyder explained that Plaintiff's pain prevented a return to work, and that he was taking Hydrocodone, Diazepam (used to treat muscle spasms), Atenolol, Nifedipine and Hydrochlorothiazide.  On examination and review of the MRI reports, Dr. Snyder confirmed that Plaintiff suffered from degenerative disc disease which caused "disabling pain."  Dr. Snyder further noted



that Plaintiff "is disabled by the pain, "is unable to increase any activities," "is unable to work and his quality of life is significantly affected." Despite this, Dr. Snyder did not believe that Plaintiff was a candidate for surgical intervention, and instead recommended "extensive rest" and continued injections.

53.     On March 15, 2016, Dr. Fok wrote a letter detailing Plaintiff's medical history, current symptoms and the treatment he received for those conditions. He noted that Plaintiff "describes the pain as a constant dull, aching, and burning sensation, and "aggravated by driving, standing for long periods, bending, twisting, lifting objects, and walking." Dr. Fok also noted that Plaintiff's "persistent pain impairs his ability to concentrate," and causes difficulty sleeping. Dr. Fok indicated that Plaintiff "has tried a total of 12 injection procedures, which have included thoracic epidural steroid injections and intercostal blocks," but those only provided "temporary relief," and overall "his pain has worsened." He further explained that Plaintiff "is unable to return to work, in spite of several months of treatment, including rest, home exercise, applying heat, walking exercises, and the abovementioned procedures." Dr. Fok then stated that "his chronic pain continues to impair his ability to function at work."

54.     Dr. Fok noted that the MRIs both showed "multiple bulging discs at the thoracic T2-3, T7-8, T8-9, and T9-10 levels." In conclusion, he noted that "due to multilevel bulging discs in the thoracic spine … Plaintiff has suffered from chronic thoracic pain for several years, and has tried several conservative modalities of care with no long-term benefits." Accordingly, with the letter, Dr. Fok "certifies the patient should be considered for long-term disability, in lieu of his chronic pain impairing his ability to function at work as an aerospace engineer."

Case No.:



55.     On March 18, 2016, Dr. Fok completed an Aetna Capabilities and Limitations Worksheet, as well as an Attending Provider Statement.  On the Capabilities and Limitations Worksheet, Dr. Fok reported that Plaintiff was limited to only occasional sitting, standing, walking, climbing, crawling, kneeling, lifting, pulling, pushing, reaching, carrying, bending, twisting and lifting up to 20 lbs. because of his degenerative disc disease and use of Baclofen and Norco.  Based on these restrictions and his ongoing treatment and examination of Plaintiff, Dr. Fok stated that Plaintiff was "unable to work."

56.     On the Attending Provider Statement, Dr. Fok listed a primary diagnosis of M51.34 (degenerative disc disease, thoracic) and a secondary diagnosis of M48.04 (spinal stenosis of thoracic region), and stated that he first treated Plaintiff for these conditions on January 17, 2012.  Asked to list the "specific physical, cognitive or behavioral activity/function" that Plaintiff was unable to perform, Dr. Fok listed "no bending, standing, driving for long periods of time," but explained that he is able to perform these tasks for short periods of time.  Dr. Fok further noted Plaintiff could only sit for ten minutes every hour.  Dr. Fok completed similar documents for MetLife that same day, in connection with Plaintiff's waiver of life insurance premium claim.  In that document, Dr. Fok offered similar statements regarding Plaintiff's condition, and affirmatively stated that he was totally disabled from both his own occupation, and any occupation, and would be for an extended period of time.

57.     On April 12, 2016, Dr. Fok extended Plaintiff's disability from May 18, 2016 to July 18, 2016, and prepared another Progress Note that was substantially similar to the records described above and below.  Importantly, he did not note any improvement in Plaintiff's condition.  Similarly, on June 13, 2016, Dr. Fok

Case No.:



1   examined and treated Plaintiff and extended his disability through at least August

2   19, 2016.

3

4       58.    Next, the July 15, 2016 appeal letter detailed why it was improper for

5   Aetna to rely on the "paper review" reports in-house employees, in-house nurse,

6   Tyler Thornton, and an in-house physician, Matthew Brodie, M.D..  In addition to

7   detailing the deficiencies in the reports by Nurse Thornton and Dr. Brodie, Plaintiff

8   noted that an insurer's reliance on peer reviewers who present their opinions in a

9   conclusory fashion, making it unclear how they reached contrasting opinions from

10   those of the insured's attending physicians, is improper as such conclusions should

11   not be relied upon over the opinions of the insured's attending physicians.

12

13       59.    The fourth point raised by the July 15, 2016 appeal letter was that

14   Aetna improperly required that Plaintiff meet a heightened definition of disability

15   not contained in the Plan.  Specifically, while Aetna and Dr. Brodie concluded that

16   Plaintiff was not disabled due to the *erroneous* conclusion that the claim file lacked

17   "objective" evidence of his disability, the LTD Plan does not include a requirement

18   that the medical evidence offered in support of a claim be solely, or even mostly,

19   "objective," and that subjective complaints of pain are necessarily insufficient to

20   support an LTD claim.

21

22       60.    Next, Plaintiff noted that while Plaintiff's claim for STD was initially

23   granted, Aetna denied his denied his ongoing claim without substantial evidence of

24   a change in or improvement of his condition or an adequate explanation of why he

25   no longer qualified for disability.  Applicable case law requires that substantial

26   evidence must support a plan fiduciary's decision not to pay benefits following an

27   initial finding of disability.  *See, e.g., Saffon v. Wells Fargo & Co. Long Term*

28   *Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008) ("MetLife had been paying

Case No.:



1   Saffon long-term disability benefits for a year, which suggests that she was already

2   disabled.  In order to find her no longer disabled, one would expect the MRIs to

3   show an improvement, not a lack of degeneration"); *Walke v. Group Long Term*

4   *Disability Ins.*, 256 F.3d 835, 840 (8th Cir. 2001).

5

6       61.     In addition, during this time, the EDD continued to approve and pay

7   Plaintiff's claim for California State Disability benefits, and Metropolitan Life

8   Insurance Company, the administrator of Boeing Life Insurance Plan, reviewed the

9   same medical information as Aetna, and *granted* Plaintiff a waiver of the life

10  insurance premium based on the finding that he was and remains disabled because

11  he was unable to perform the material and substantial duties of his occupation.

12  Similarly, on June 27, 2016, Boeing extended his leave of absence through at least

13  August 18, 2016 based on the finding that he was unable to return to work.  In order

14  to provide Plaintiff with a "full and fair" review of his claim, Aetna was required to

15  take these other disability determinations into account.

16

17      62.     While Plaintiff received STD benefits from September 4, 2015 to

18  January 17, 2016, in the denial letter, and other benefits thereafter, Aetna failed to

19  provide substantial evidence of an improvement in Plaintiff's condition to justify its

20  decision.  Indeed, as Plaintiff's condition is degenerative, nothing in Plaintiff's

21  claim records justified Aetna's denial.  Aetna's failure to explain why it denied

22  Plaintiff's claim for LTD benefits without substantial evidence of improvement is

23  evidence of its impropriety.

24

25      63.     Finally, the July 15, 2016 appeal letter explained that Aetna's failure to

26  explain what additional information was needed to support Plaintiff's claim for

27  benefits was a wrongful failure to engage with Plaintiff in a "meaningful dialogue."

28

Case No.:



64.     Following the submission of the July 15, 2016 appeal letter, Plaintiff provided additional medical documentation supportive of his claim.  First, on August 3, 2016, Plaintiff proved a record from Dr. Fok placing him off work until at least October 20, 2016.  In addition, Plaintiff completed Aetna's Appeal Request Form in which he indicated that due to pain in his mid-back and radiating around his rib cage, he is unable to return to work.  In addition, pursuant to his physician's recommendations, Plaintiff is taking opioid medication throughout the day, which prevents sustained focus and concentration.

65.     Then, on August 11, 2016, Plaintiff provided updated medical records from Dr. Fok and Dr. Minkoff.  These documents further confirmed the diagnoses, restrictions and limitations detailed in Plaintiff's other medical documents, confirming his entitlement to LTD benefits.

66.     Despite the consistent, overwhelming evidence of Plaintiff's disability, Aetna notified Plaintiff, by letter dated September 8, 2016, that it was upholding the denial of his claim asserting that the medical evidence does not support deficits in Plaintiff's functional ability that would prevent him from performing the material duties of his occupation.  Despite Plaintiff's July 15, 2016 appeal letter detailing the many problems with Aetna's denial decision, Aetna failed to address any of the issues raised by Plaintiff in that letter.  Instead, Aetna made it clear that its decision was almost entirely on the biased and uniformed physician review conducted by "paper reviewer" Behzad Emad, M.D.

67.     In denying Plaintiff's claim for ongoing LTD benefits, Aetna's placement of greater weight upon the opinions of a paid medical reviewer over the conclusions of Plaintiff's treating physicians is improper for several reasons.  First, the opinion was based solely on a "paper review" of Plaintiff's medical records, not



an actual examination of Plaintiff.  Aetna failed to exercise its right to have Plaintiff

examined by an outside physician.  Second, this reviewer downplayed the findings

of Plaintiff's treating physicians regarding his functional limitations so as to reach a

finding that he was not disabled.  Third, the conclusions were cursory and

conclusory in nature with no analysis of the medical records or the contrary opinions

of Plaintiff's treating physicians.  Finally, while Dr. Emad stated that a copy of his

report was sent to Dr. Fok's office for review and comment, this was false as Dr.

Fok did not receive the report, nor did he receive any of the calls Dr. Emad allegedly

made to his office.  This falsification in his report evidences Dr. Emad's bias in

favor of Aetna.


68.     The decision to deny an insured's claim after only a "paper review" of

the available records has been criticized by the Ninth Circuit.  *Montour v. Hartford

Life & Accident*, 588 F.3d 623, 630 (9th Cir. 2009) (citing *Metropolitan Life Ins. Co.

v. Glenn*, 554 U.S. 105 (2008)).  An administrator may not "arbitrarily refuse to

credit a claimant's reliable evidence, including the opinions of treating physicians."

*Id.*; *see also Michaels v. Equitable Life Assur. Soc.*, 305 F. App'x 896, 906-07 (3d

Cir. 2009) (questioning administrator's choice to give determining weight to the

conclusions of expert's paper review reports over the conclusions of claimant's

treating physicians); *Moskalski v. Bayer Corp.*, 2008 WL 2096892 at *9 (W.D. Pa.

2008) ("[T]he selective, self-serving use of medical information is evidence of

arbitrary and capricious conduct.").  Indeed, reported decisions reflect that it is often

improper for a plan administrator to deny a claim by relying on the paper-review

reports of consultants that oppose the conclusions of treating physicians.  *See e.g.,

Schwarzwaelder v. Merrill Lynch & Co., Inc.*, 606 F. Supp. 2d 546, 559 (W.D. Pa.

2009); *Elms v. Prudential Ins. Co. of Am.*, 2008 WL 4444269 at *15 (E.D.  Pa.

2008) (It is "important to note that no doctor who has actually treated [plaintiff] or

examined him in person, as opposed to performing a "file review" has found him to

Case No.:



be capable . . . of performing work-related tasks."); *Winkler v. Metropolitan Life Ins. Co.*, 170 F. App'x 167 (2d Cir. 2006) (vacating denial as arbitrary where it was based "entirely on the opinions of three independent consultants who never personally examined [plaintiff], while discounting the opinions" of the treating physicians); *Glenn v. MetLife*, 461 F.3d 660, 671 (6th Cir. 2006), aff'd by *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (finding it "perplexing" that the plan administrator disregarded the opinion of the "only physician to have personally treated or observed" the claimant); *Kinser v. Plans Admin. Comm. of Citigroup, Inc.*, 488 F. Supp. 2d 1369, 1382-83 (M.D. Ga. 2007) (concluding it was unreasonable for the plan administrator to ignore the treating physician's "clearly stated and supported opinion" and rely instead on "a cold record file-review by a non-examining" consultant).

69.    The Supreme Court has recognized that when a fiduciary, such as Aetna, uses medical reviewers on a regular basis, a concern arises from the fact that the physicians may be motivated to render opinions in favor of the insurer.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 155 L.Ed.2d 1034 (2003) ("Nor do we question the [Ninth Circuit] Court of Appeals' concern that physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of not disabled in order to save their employers money and to preserve their own consulting arrangements.'").  Similarly, other courts recognized that the opinions of captive medical professionals have less credibility since they too have an incentive to slant their reports to favor their employer.  *See Graham v. L & B Realty Advisors, Inc.*, 2003 WL 22388392, *4 (N.D. Tex., 2003) (court "troubled"



by the potential conflict of interest from Dr. Neuren's position as a captive professional).[2]

70.     Additionally, Aetna neglected to describe specifically what functional impairments would establish Plaintiff's entitlement to benefits.  Moreover, the denial letter failed to identify what additional evidence was necessary to support Plaintiff's claim for LTD benefits.  Aetna's failure to explain what additional information was needed to support Plaintiff's claim for benefits was a wrongful failure to engage with Plaintiff in a "meaningful dialogue."  *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011) (holding where the administrator issues a denial based on absence of medical evidence, the administrator is obligated to state in plain language what additional evidence it needed to satisfy the "meaningful dialogue" requirement).

71.     While the September 8, 2016 denial letter stated that Plaintiff's medical records lack "clinical correlation for any specific restrictions preventing [him] from working," Aetna failed to instruct Plaintiff as to what "clinical correlations" it would deem sufficient to support his claim for benefits.

72.     Even more importantly, Aetna indicated that Plaintiff's restrictions and limitations did "not rise to the level of severity, which prevented him from performing a sedentary occupation, such as his own occupation as a Project Engineer 6."  However, Plaintiff's job was not sedentary in nature.  As Plaintiff described on the Aetna "Work History and Education Questionnaire," the physical requirements of his job required approximately three hours a day sitting, three hours a day standing and two hours a day walking, as well as frequent bending/stooping

---

[2] Aon Hewitt also used the opinion of a "paper review" physician who never examined Plaintiff, as a basis to deny Plaintiff's ongoing STD claim.  Accordingly, Aon Hewitt's decision was similarly biased and improper.



and pushing/pulling, and occasional crawling, reaching above shoulder level, kneeling, lifting up to 50 lbs. (Further, even Aon Hewitt stated that Plaintiff's job required "light" not "sedentary" duties.) Simply put, Aetna mischaracterized the nature of Plaintiff's occupation so it could deny his claim when in fact these physical requirements were beyond Plaintiff's capability.

73.     The job description Aetna obtained from Boeing described the job as sedentary, but it did not list any actual physical requirements. Faced with the disparity, Aetna failed to follow up with Boeing an attempt to resolve the dispute. Instead, Aetna put its own interests ahead of Plaintiff's, and chose to focus only on the evidence that supported a claim denial, and deemphasizing evidence that supported Plaintiff's claim. The United States Supreme Court criticized such actions in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008).

74.     Finally, Aetna explained that in denying Plaintiff's claim, it was relying on Dr. Emad's conclusion that "the clinical presentation did not support any functional impairment." However, this is incorrect as the medical documents from Plaintiff's physicians, and his own self-reports of limiting pain, document his "functional impairment."

75.     Aetna's disregard of Plaintiff's self-reported complaints without explanation, and its attempt to demand clinical or objective evidence where no such evidence exists, or was overlooked by Aetna, is improper. In *Hagerty v. American Airlines Long Term Disability Plan*, 2010 U.S. Dist. LEXIS 91995 (N.D. Cal. Sept. 3, 2010), the court noted that "[n]umerous courts found it [in] error to require objective medical evidence of complaints that are inherently subjective in nature." *Id.* at *6 (citing *Montour*, *supra* at 635 ("unreasonable for Hartford to require Montour to produce objective proof of his pain level")); *Cook v. Liberty Life Assur.*



1  *Co. of Boston*, 320 F.3d 11, 21 (1st Cir. 2003) (requiring objective documentation of

2  Chronic Fatigue Syndrome is unreasonable); *Mitchell v. Eastman Kodak Co.*, 113

3  F.3d 433 (3rd Cir. 1997) (same).  Indeed, an ERISA plaintiff is entitled to rely on

4  credible subjective evidence in support of his claim.  *Oldoerp v. Wells Fargo & Co.*

5  *Long Term Disability Plan*, 2014 U.S. Dist. LEXIS 9847, 2014 WL 294641 (N.D.

6  Cal. Jan. 27, 2014).  Aetna failed to explain why Plaintiff's self-reported complaints,

7  which are consistently documented by several treating physicians and therapists, are

8  insufficient to establish his disability, and alternatively, what sort of clinical findings

9  or diagnostic evidence would be sufficient to establish Plaintiff's disability.

10

11     76.     After receiving Aetna's denial letter, Plaintiff contacted Dr. Fok to ask

12  about Dr. Emad's statement that a copy of his report was sent to Dr. Fok's office for

13  review and comment, but that Dr. Fok failed to respond.  However, when reached,

14  Dr. Fok denied that he received Dr. Emad's report, and also the assertion that he

15  received any of the calls Dr. Emad allegedly made to his office

16

17     77.     In light of Aetna's failure to ensure that Dr. Fok was provided with the

18  proper opportunity to review a copy of Dr. Emad's report prior to its claim decision,

19  Plaintiff obtained a copy of the Administrative Record and provided a copy of Dr.

20  Emad's report to Dr. Fok himself.  Dr. Fok reviewed the report, and prepared a

21  response, dated December 12, 2016.

22

23     78.     On December 15, 2016, Plaintiff, though his counsel, provided Dr.

24  Fok's December 12, 2016 letter to Aetna.  In the letter, Dr. Fok explained that

25  neither he nor his office received any calls or a copy of a report from Dr. Emad and

26  that he reviewed Dr. Emad's report, but that he "disagree[d] with his conclusions."

27  Dr. Fok stated that Dr. Emad's assertion that the medical records do not support

28  Plaintiff's claims of pain, restrictions and limitations was "patently untrue," and

Case No.: 

offered specific examples from the medical records to support his position.  Dr. Fok next explained that Dr. Emad's conclusion that Plaintiff's medical records do not support functional limitations after March 7, 2016 is similarly incorrect.  Dr. Fok then noted that Plaintiff's conditions are degenerative in nature and "do not suddenly resolve themselves as Dr. Emad seems to suggest occurred."  Finally, Dr. Fok explained that Dr. Emad had no basis to offer opinions regarding Plaintiff's functional limitations without examining him.  With his letter, Dr. Fok asked Aetna to reverse its claim decision.  (Along with Dr. Fok's letter, Plaintiff also included his Progress Note from December 1, 2016 and the prescription for Norco and Valium.)

79.    By letter dated January 17, 2017, Aetna informed Plaintiff that its September 8, 2016 decision was final, and that it would not consider the information that its "paper review" physician failed to contact Dr. Fok.  Aetna also refused to consider Dr. Fok's additional statements in support of Plaintiff's disability, which Aetna failed to obtain during the claim review process.

80.    Aetna's denial letters stated that its decision is final, Plaintiff's administrative remedies have been exhausted and he has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

<u>Standard of Review</u>

81.    The proper standard of review is de novo.  Neither Aon Hewitt nor Aetna have discretionary authority pursuant to California Insurance Code Section 10110.6, and it erred in denying Plaintiff's claims.  California Insurance Code Section 10110.6 states in the relevant part:



(a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

(b) For purposes of this section, "renewed" means continued in force on or after the policy's anniversary date.

(c) For purposes of this section, the term "discretionary authority" means a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court.

...

(g) This section is self-executing. If a life insurance or disability insurance policy, contract, certificate, or agreement contains a provision rendered void and unenforceable by this section, the parties to the policy, contract, certificate, or agreement and the courts shall treat that provision as void and unenforceable.

82.     This section, by its own terms, applies to any policy or agreement that provides "disability insurance coverage" to "any California resident" regardless of where it was offered, issued, delivered, or renewed.  Here, as there is no dispute that Plaintiff is a California resident, this section applies to the Policy and Plan at issue so long as they were offered, issued, delivered, or renewed after the effective date of the statute, which is January 1, 2012, but before Plaintiff's claim accrued.  *See Gonda v. The Permanente Med. Grp., Inc.*, 2014 WL 186354, at *2 (N.D. Cal. Jan. 16, 2014).  No party disputes that Plaintiff's STD claim accrued no earlier than February 10, 2016, the date on which his claim for STD benefits was first denied, and that his LTD claim accrued no earlier than March 4, 2016, the date on which his claim for LTD benefits was first denied.  *See Grosz–Salomon v. Paul Revere Life*



1  *Ins.*, 237 F.3d 1154 (9th Cir. 2001) (an ERISA claim for relief based on a denial of

2  ERISA benefits accrues at the time benefits are denied).

3

4       83.    Thus, the only issue is whether the policy was offered, issued,

5  delivered, or renewed on or after January 1, 2012, but before the February 10, 2016

6  and March 4, 2016 denials.  For the purposes of section 10110.6, a policy

7  automatically renews every year on the policy's anniversary date.  See Cal. Ins.

8  Code § 10110.6(b) (providing that "renewed" means "continued in force on or after

9  the policy's anniversary date").  Here, the Policy is dated January 1, 2006.  This

10 means the Policy's renewal date falls within the relevant time period, as the policy

11 continued in force through January 1, 2012 and renewed annually.  *See Gonda,*

12 *supra* at 1093-1094; *Polnicky v. Liberty Life Assur. Co. Of Boston*, 999 F. Supp. 2d

13 1144, 1148 (N.D. Cal. 2013) (applying de novo standard of review to ERISA claim

14 for denial of benefits because "[t]he Policy was continued in force after its January

15 1, 2012 anniversary date, [so] any provision in the Policy attempting to confer

16 discretionary authority to Liberty Life was rendered void and unenforceable").  As

17 such, any grants of discretion that can be deemed to be a part of the Policy are void

18 and unenforceable, and thus, the denial of benefits at issue must be reviewed de

19 novo.

20

21      84.    In a de novo review, "the burden of proof is placed on the claimant" to

22 establish entitlement to plan benefits.  *Muniz v. Amec Const. Mgmt., Inc*., 623 F.3d

23 1290, 1294 (9th Cir. 2010).  "When conducting a de novo review of the record, the

24 court does not give deference to the claim administrator's decision, but rather

25 determines in the first instance if the claimant has adequately established that he or

26 she is disabled under the terms of the plan."  *Id*. at 1295-96.  The trial court

27 performs an "independent and thorough inspection" of the plan administrator's

28 decision in order to determine if the plan administrator correctly or incorrectly

Case No.:



denied benefits.  *Silver v. Executive Car Leasing Long–Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006).  De novo review permits the trial court to "evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir.1999).

85.     Regardless of the standard of review this Court applies, Aon Hewitt and Aetna reached incorrect claim decisions given the ample medical evidence in Administrative Records that support Plaintiff's disability claims.  Both Aon Hewitt and Aetna conducted biased claims investigations that failed to provide Plaintiff with a full and fair review of his claims, in violation of ERISA.

86.     Plaintiff is now, and at all times relevant remained, "disabled" as defined in both the STD Plan and LTD Plan, and has now, and at all times relevant, convincingly demonstrated his total disability through medical records and other documents, information and correspondence.

## **FIRST CLAIM FOR RELIEF**

To Recover Benefits, Attorneys' Fees, Pre-Judgment and Post-Judgment Interest under ERISA Plan – 29 U.S.C. sections 1132(a)(1)(B), (g)(1)

(Plaintiff against Aon Hewitt, Boeing and Aetna and Does 1 through 10)

87.     Plaintiff incorporates the previous paragraphs as though fully set forth herein.

88.     ERISA section 502(a)(1)(B), 29 U.S.C. section 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

-32-

Case No.:



89.     At all relevant times, Plaintiff has been entitled to both STD and LTD benefits under the Plans.  By denying Plaintiff's claims for STD and LTD benefits under the Plans, and by related acts and omissions, Defendants violated, and continue to violate, the terms of the Plans and Plaintiff's rights thereunder.

90.     Defendants failed to follow even the most rudimentary claims processing requirements of ERISA and the Department of Labor Regulations and has failed to conduct a "full and fair review" of the claim denial, as required by 29 U.S.C. section 1133(2).  Thus, even if the Plans vests discretion in Aon Hewitt and/or Aetna to make benefit determinations, no deference is warranted with regard to the handling of the claims.  *See Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir. 1997); *Jebian v. Hewlett-Packard Company Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When decisions are not in compliance with regulatory and plan procedures, deference may not be warranted.").

91.     A "prudent person" standard is imposed on ERISA fiduciaries.  *See* 29 U.S.C. §1104(a)(1)(b).  A "fiduciary" is also under a duty of loyalty and care to the beneficiaries of the Plan.  *See* 29 U.S.C. section 1104(a)(1).  Under ERISA: (1) a fiduciary must discharge its duties solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing plan benefits to them; (2) a fiduciary must act with care, skill, prudence and diligence; and (3) a fiduciary may not act in any capacity involving the Plan, on behalf of a party whose interests are adverse to the interests of the Plan, its participants, or its beneficiaries.  Aon Hewitt's and Aetna's handling of Plaintiff's disability benefit claims fall far short of these standards.



-33-



92.     For all the reasons set forth above, the decisions to deny Plaintiff's claims for disability insurance benefits were arbitrary, capricious, wrongful, unreasonable, irrational, contrary to the evidence, contrary to the terms of the Plans and contrary to law.  Aon Hewitt and Aetna abused their discretion, if any, in deciding to deny the claims as the evidence shows the denial decisions were arbitrary and capricious.  Further, given Aetna funds the payment of LTD benefits, its denial decision heighten the level of skepticism it will receive the Court.  *See Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006); *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008).  Aon Hewitt's and Aetna's denial of Plaintiff's claim constitutes an abuse of discretion as evidenced by, but not limited to the following conduct:

- Ignoring the obvious evidence supporting his claims for STD and LTD benefits, and instead combing the record and taking selective evidence out of context and greatly over-emphasizing its significance as a pretext to deny Plaintiff's claim;

- Ignoring the opinions of Plaintiff's treating physicians, who maintained that Plaintiff is and was unable to return to work. Deference should be given to these physicians' opinions as there are no specific, legitimate reasons for rejecting these physicians' opinions which are based on substantial and objective evidence in the claim file;

- Requiring that Plaintiff provide *objective* evidence of his functional loss secondary to impairment stemming from severe back pain, when the Plans do not require that a claimant provide objective evidence of a disability.  In the alternative, Defendants

Case No.:



ignored Plaintiff's objective proof of disability, which included MRI reports, decreased range of motion and tenderness which confirmed Plaintiff's diagnoses of degenerative disc disease, spinal stenosis, severe and disabling back pain and other conditions;

- Refusing to examine Plaintiff, instead relying on "paper reviews" conducted by its obviously biased reviewers, who issued opinions contrary to Plaintiff's treating physicians, who ignored medical records supporting Plaintiff's disability and who fabricated alleged attempts to contact Plaintiff's doctor in order to make it appear that his treating doctor would not respond to him.  The paper reviewers downplayed the findings of Plaintiff's treating physicians regarding his functional limitations, so as to reach findings that Plaintiff was not disabled.  The paper reviewers' conclusions were cursory and conclusory in nature with no analysis of the medical records and/or the contrary opinions of Plaintiff's treating physicians;

- Failing to reconcile Plaintiff's initial award of STD benefits, Plaintiff's receipt of  California State Disability benefits, Plaintiff's receipt of disability based waiver of premium benefits under Boeing's Life Insurance Plan after a review by life insurance insurer Metropolitan Life Insurance Company and Boeing's decision to approve Plaintiff's extended leave of absence from work after finding he was unable to return to work;

- Failing to accurately assess Plaintiff's occupational duties;



- Failing to make a "full and fair" assessment of the claims and to clearly communicate to Plaintiff the "specific reasons" for his benefit denials;

- Failing to engage in a "meaningful dialogue" with Plaintiff. Aon Hewitt and Aetna were obligated to, but failed to, state in plain language what additional evidence they needed and what questions they needed answered so that Plaintiff could provide the additional material and information to support his claims; and

- Failing to comply with ERISA's procedural requirements providing a full and fair review.

93.    As a direct and proximate result of the denial of Plaintiff's claims for STD and LTD benefits, Plaintiff has been deprived of STD benefits from January 17, 2016 to March 3, 2016, and LTD benefits from and after March 4, 2016.

94.    As a direct and proximate result of the denial of his claims for STD and LTD benefits, Plaintiff has been required to incur attorneys' fees to pursue this action, and is entitled to reimbursement of these fees pursuant to 29 U.S.C. section 1132(g)(1).

95.    A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plans and therefore entitled to STD and LTD benefits. Plaintiff seeks the declaration of this Court that he meets the Plans' definitions of disability, and is entitled to benefits under the Plans. In the alternative, Plaintiff seeks a remand to the claims administrators for a determination of Plaintiff's claims consistent with the terms of the Plans.

Case No.:



96.     Plaintiff alleges all of the same conduct against Does 1 through 10 as it does against Defendants in this First Claim for Relief and in this Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court grant the following relief against all Defendants:

1.   For all Plan benefits due and owing Plaintiff, including STD and LTD benefits;

2.   For costs and reasonable attorneys' fees pursuant to 29 U.S.C. section 1132(g);

3.   For pre-judgment and post-judgment interest on the principal sum, accruing from the date the obligations were incurred.  *See Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007) ("A district court may award prejudgment interest on an award of ERISA benefits at its discretion."); *Drennan v. General Motors Corp*., 977 F.2d 246, 253 (6th Cir. 1992).  Specifically, Plaintiff seeks interest at the rate of 10% per annum, pursuant to California Insurance Code section 10111.2; and

4.   For such other and further relief as this Court deems just and proper.

Dated:  March 8, 2017                    MCKENNON LAW GROUP PC

By: _____
ROBERT J. McKENNON
SCOTT E. CALVERT
Attorneys for Plaintiff Brian Wright

Case No.: